UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMUEL J. SMOLEN, JR.,[1]
Plaintiff,

DECISION AND ORDER

-v-

11-CV-6434 CJS

C.O. ROBERT K. DILDINE, et al.,

Defendants.

---

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 in which prison inmate Samuel Smolen ("Plaintiff") alleges that staff members at Southport Correctional Facility ("Southport") violated his federal constitutional rights in August 2008. Now before the Court is Defendants' motion for summary judgment (Docket No. [#8]). The application is granted and this action is dismissed.

BACKGROUND

On or about August 31, 2011, Plaintiff commenced the instant action.[2] The Complaint [#1] alleges that on August 27, 2008, at Southport, Corrections Officers Robert Dildine ("Dildine"), Eric Jaynes ("Jaynes") and Jason Hayes ("Hayes") assaulted Plaintiff in his cell while he was handcuffed behind his back, in retaliation for grievances that he had filed.

---

[1]In his Complaint, Plaintiff repeatedly spells his surname "Smolen." However, the website of the New York State Department of Corrections and Community Supervision indicates that his name is spelled "Smollen." Moreover, Plaintiff signed an inmate grievance using the spelling "Smollen." *See*, Complaint [#1] at p. 20, attached grievance. It is unclear to the Court why Plaintiff spells his name differently at different times.

[2]The complaint is dated August 20, 2011, and was filed on August 31, 2011. The exact date of filing, to be determined under the prison "mailbox rule," is unclear. *See, Hicks v. LeClair*, No. 9:07-CV-0613 (JKS), 2008 WL 5432217 at *3, n. 1 (N.D.N.Y. Dec. 30, 2008) ("Under the 'mailbox rule,' a[n inmate's filing] is deemed filed on the date he delivers the application to the prison authorities for mailing.") (citations omitted).

Curiously, though, only six days after the alleged assault, on September 2, 2008, Plaintiff filed an inmate grievance in which he claimed that he was assaulted by only two corrections officers, not three.[3]

In any event, the Complaint [#1] alleges that other corrections officers failed to intervene in the assault, and that immediately following the assault, Angela Gorg, R.N. ("Gorg") failed to accurately record or treat his injuries. On that point, however, the Complaint [#1] alludes to "injuries," but does not indicate that Plaintiff sustained any particular injury.[4] Plaintiff further alleges that while Gorg was examining him, Corrections Sergeant D. Holton ("Holton"), Corrections Officer R. Lovejoy ("Lovejoy"), Corrections Officer S. Davis ("Davis") and Corrections Officer M. Labar ("Labar") used excessive force against him, "in the way they held [his] restraints and [the way they] pushed and pulled [his] body," and "verbally abused" him by calling him "foul names" and telling him to "shut up" when he yelled in pain.[5] Plaintiff maintains that Lovejoy, Davis and Labar mistreated him in that manner in retaliation for him filing grievances. Additionally, Plaintiff contends that Holton, as well as Corrections Officer R. Held ("Held") and Corrections Officer J. Little ("Little") failed to protect him from the physical and verbal abused by Lovejoy, Davis and Labar.

The Complaint further blames Southport's Superintendent, David Napoli ("Napoli"), and Deputy Superintendent for Security, J. Colvin ("Colvin"), for failing to prevent the attack. Specifically, the Complaint indicates that prior to August 27, 2008, Plaintiff sent letters to Napoli and Colvin, indicating that he was "being threatened by staff for filing complaints and

---

[3]The grievance is part of the Complaint. *See*, Complaint [#1] at p. 20, attached grievance.

[4]*See, e.g.*, Complaint [#1] at p. 5B.

[5]Complaint [#1] at pp. 12, 14-15.

grievances."[6]  However, the Complaint [#1] does not indicate that such letters indicated that he was in imminent danger of physical harm, or that the threats were made by any defendant in this action.[7]  To the contrary, a grievance form that is attached to the Complaint [#1] indicates that Plaintiff previously complained of "abuse and threats" from Corrections Officer "J. Robinson," who is not a party to this action.[8]

Following the alleged attack, Plaintiff was issued a misbehavior report, which accused him of having attempted to spit on staff.[9]  In that regard, Defendants maintain that it was necessary to use physical force to restrain Plaintiff because he attempted to spit on the Corrections Officers.  Plaintiff was found guilty of the charge at a disciplinary hearing. Plaintiff contends that Hearing Officer J. Esgrow ("Esgrow") violated his due process rights at the hearing by failing to request a "timely extension" of the hearing, by failing to allow him to call witnesses, by "choosing to ignore the contradictory evidence" and by convicting him without proof.[10]   Plaintiff further contends that the New York State Department of Corrections and Community Supervision's ("DOCCS") Director of Special Housing, Norman Bezio ("Bezio"), violated his rights by granting an extension to continue the disciplinary hearing, and by later affirming Esgrow's determination.

---

[6]Complaint [#1] at p. 5c

[7]A grievance attached to the Complaint [#1] also indicates that two days before the alleged assault he sent a letter to the Inspector General complaining of threats against him.  However, the Complaint does not allege that any defendant in this action was aware of such letter at the time of the assault. *See*, attached Grievance 44900-08, handwritten p. II.

[8]*See*, Complaint [#1] at p. 22 & attached Grievance 44900-08 at handwritten p. III.

[9]From Plaintiff's papers, it appears that Defendants maintain that their use of force against him on August 27, 2008 was in response to Plaintiff attempting to spit on corrections officers.

[10]Complaint [#1] at p. 16.

The Complaint indicates that Plaintiff is suing Dildine, Jaynes, Hayes, Gorg, Holton, Jovejoy, Davis, Labar, Napoli, Colvin, Bezio, Esgrow,[11] Held and Little in their individual and official capacities. The Complaint [#1] demands both money damages and injunctive relief. As for injunctive relief, the Complaint demands that Plaintiff be transferred out of Southport, and that DOCCS "install color recording video cameras in all inside and outside areas of [Southport]."[12]

Plaintiff signed the *pro se* Complaint on August 20, 2011, just one week before the three-year statute of limitations expired as to most of his claims.

On February 6, 2012, Defendants filed the subject motion for summary judgment [#8].[13] The motion is supported by an affidavit from Hayes, a medical report from Gorg, and the transcript of the prison disciplinary hearing. The affidavit from Hayes indicates that while he was transporting Plaintiff to the showers on August 27, 2008, Plaintiff turned and attempted to spit on him, whereupon he applied a body hold and put Plaintiff back in his cell. Hayes admits that he placed Plaintiff face down on his bunk, because Plaintiff was struggling. However, Hayes denies striking Plaintiff or otherwise using excessive force, and indicates that he did not see any other staff strike Plaintiff or use excessive force.

---

[11]The Complaint actually does not expressly indicate that Plaintiff is suing Escrow in his individual and official capacities, but since Plaintiff is suing all the other defendants in that manner, the Court liberally construes the Complaint as also intending to sue Esgrow in that manner.

[12]Complaint [#1] at p. 6/6B

[13]Defendants served Plaintiff with an *Irby* notice, as required by Local Rule of Civil Procedure 56(b). *See*, Docket No. [#9]. Both the Notice of Motion and *Irby* notice referred to Local Rule 56, and advised Plaintiff that the action might be dismissed if he failed to respond.

Gorg's medical report indicates that she examined Plaintiff after the incident, and saw only a "large red area [on his] mid to upper back crossing his shoulder blades," for which he did not require treatment.

The transcript of the disciplinary hearing indicates, in pertinent part, the following: 1) Esgrow advised Plaintiff of his rights at the hearing, including the right to offer evidence and request witnesses; 2) Esgrow adjourned the hearing for a week, because he needed to line up witnesses that Plaintiff had requested, and because he was away from work for a week; 3) Esgrow provided Plaintiff with reports and photographs from the incident; 4) corrections officers testified that they used force to place Plaintiff back in his cell after he attempted to spit, and that they did not use their fists to hit him; 5) Plaintiff testified that the officers may have thought he was going to spit because his mouth was open, because he had been to the dentist earlier that day;[14] 6) Esgrow permitted testimony by inmate witnesses, but only one inmate agreed to testify, and that inmate indicated that he did not see what happened, but only heard Plaintiff say, "What did I do to deserve this?"; 7) Esgrow showed Plaintiff documents that other inmates had signed, indicating that they did not wish to testify; 8) Plaintiff commented during the hearing that Esgrow had initially been "very fair" to him, but later stated that he thought Esgrow's "tone" had changed, and that he was not being

[14]Hearing Trascript at pp. 4, 64-65. Plaintiff's defense, essentially, was that at the time of the alleged infraction, he was close to finishing his sentence in segregated housing at Southport, and that it was unlikely that someone who was so close to being released from Southport would commit another infraction. Plaintiff seemed to admit, however, that although he was not attempting to spit, he was making some kind of unusual motion with his mouth, due to the fact that earlier that day he had been to the dentist, who had placed plaster in Plaintiff's mouth in order to make a mold for dentures.

impartial;[15] and 9) at the close of the evidence, Esgrow found Plaintiff guilty of the charges and explained why.[16]

After Defendants filed their motion, the Court extended the *pro se* inmate Plaintiff's time to respond to Defendants' motion, at least twice. On August 16, 2012, the Court issued an Order [#16] responding, in part, to a request by Plaintiff that he be permitted to conduct discovery before responding to the summary judgment motion. On that point, the Court advised Plaintiff that he could make an application pursuant to "Rule 56(d), formerly 56(f)," and that he would need to submit an affidavit explaining what discovery he needed and how it would be likely to create a triable issue of fact. However, Plaintiff never made such an application.

On October 19, 2012, the Court issued a "Final Amended Scheduling Order" [#23], which directed Plaintiff to file and serve a response to the summary judgment motion by November 9, 2012. By that time, Plaintiff had been in possession of Defendants' motion papers for ten months. Nevertheless, and despite the subsequent passage of eighteen months since that deadline, Plaintiff never responded to the summary judgment motion or filed any additional papers in this action.

## DISCUSSION

### *Rule 56*

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The underlying facts contained in affidavits, attached exhibits,

[15]Hearing Transcript at pp. 21, 46, 58, 68.

[16]Hearing Transcript at pp. 68-69.

and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

A party cannot demonstrate a triable issue of fact based on mere speculation or conjecture. *See, e.g., U.S. v. Potamkin Cadillac Corp.*, 689 F.2d 379, 381 (2d Cir. 1982) ("[I]n order to defeat a motion for summary judgment, the opposing party must set forth *specific facts* showing that there is a genuine issue for trial.  Such an issue is not created by a mere allegation in the pleadings, nor by surmise or conjecture on the part of the litigants.") (emphasis added; citations and internal quotation marks omitted); *see also, D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some *hard evidence* showing that its version of the events is not wholly fanciful.") (emphasis added); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) ("In determining whether a genuine issue of material fact exists for trial, we are obliged carefully to distinguish between evidence that allows for a reasonable inference . . . and evidence that gives rise to mere speculation and conjecture.") (citation and internal quotation marks omitted).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact.  However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for

trial in order to avoid summary judgment." *CILP Associates, L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citations and internal quotation marks omitted)

However, the Court is mindful that Plaintiff is entitled to some degree of special solicitude, in light of the fact that he is a *pro se* inmate asserting civil rights claims. On this point, the Second Circuit has stated:

> It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants. The rationale underlying this rule is that a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection. Somewhat unsurprisingly, then, district courts within this Circuit have developed a practice of withdrawing this solicitude if a *pro se* litigant is deemed to have become generally experienced in litigation through participation in a large number of previous legal actions. We have occasionally endorsed some limited forms of this practice, and have recently suggested that it may be appropriate to charge a *pro se* litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements of the legal system with which he is familiar as a result of his extensive prior experience in the courts. At the same time, however, we have also recently expressed, albeit in dicta, our concern that the general withdrawal of solicitude may impose unreasonable burdens on *pro se* litigants in some circumstances.
>
> The solicitude afforded to *pro se* litigants takes a variety of forms. It most often consists of liberal construction of pleadings, motion papers, and appellate briefs. It is not, however, limited to this specific procedural setting. Rather, it also embraces relaxation of the limitations on the amendment of pleadings, leniency in the enforcement of other procedural rules, and deliberate, continuing efforts to ensure that a *pro se* litigant understands what is required of him.
>
> The scope of the solicitude afforded may vary depending on the procedural context and the demands placed by that context upon the inexperienced litigant. For example, in light of the particular difficulties presented by a motion

> for summary judgment, this Court has previously indicated that a district court errs by failing to advise a *pro se* litigant of the nature of such a motion and the consequences of failing to respond to it properly, unless the opposing party has already provided the *pro se* litigant with such notice or it is otherwise clear from the record that the pro se litigant understands the nature of the motion.
>
> In addition, the appropriate degree of special solicitude is not identical with regard to all *pro se* litigants. We have sometimes suggested that a court should be particularly solicitous of *pro se* litigants who assert civil rights claims, and litigants who are incarcerated also receive certain special solicitude. Alternatively, as noted above, the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented. The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all.
>
> In sum, relevant precedent indicates that, while a *pro se* litigant should ordinarily be afforded a substantial degree of solicitude, the exact degree thereof will depend upon a variety of factors, including, but not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant. In some circumstances, such as when a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience such that it is appropriate to charge him with knowledge of particular requirements, it falls well within a district court's discretion to lessen the solicitude that would normally be afforded. . . . [D]istrict courts should exercise their discretion in such cases, subject to review for its abuse, to determine based on the totality of the relevant circumstances when the ordinary approach is not appropriate and what degree of solicitude, if any, should be afforded.

*Tracy v. Freshwater*, 623 F.3d 90, 101-103 (2d Cir. 2010) (citations and internal quotation marks omitted).

At the outset, the Court must consider how much solicitude to extend to Plaintiff, in light of the fact that he completely failed to respond to Defendants' motion. Plaintiff signed his complaint under penalty of perjury, and generally, "[a] verified complaint is to be treated

as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted). On the other hand, Local Rule of Civil Procedure 56(a)(2) states, in pertinent part:

> The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried. <u>Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.</u>

Local Rule 56(a)(2) (emphasis added).

In this action, although Plaintiff did not comply with Local Rule 56(a), the Court has discretion whether to overlook such failure and conduct its own review of the record. On that point, the Second Circuit has stated:

> A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules. Thus, we have previously indicated, and now hold, that while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.

*Holtz v. Rockefeller & Co., Inc.* 258 F.3d 62, 73 (2d Cir. 2001) (citations and internal quotation marks omitted).

Here, the Court extends special solicitude to Plaintiff insofar as it liberally construes his Complaint to raise the strongest claims that it suggests. The Court has also been

especially lenient in granting Plaintiff extensions of time to respond to Defendants' motion. However, the Court has decided, in its discretion, not to excuse Plaintiff's failure to comply with Local Rule 56 or to conduct its own review of the record. The Court declines to do so for several reasons. First, Plaintiff was advised in writing, multiple times, of the requirements of the local rule.[17] Further, Plaintiff was clearly aware of his need to respond to the motion, since he requested, and was granted, extensions of time to do so. Consequently, the Court finds that Plaintiff's failure to respond to the motion was not inadvertent. Additionally, Plaintiff is an experienced *pro se* prison litigator who, between 1989 and 2011, filed nine lawsuits in the Western District of New York. According to a Westlaw search, Plaintiff also commenced federal lawsuits in the Southern and Northern Districts of New York, and at least one lawsuit in the New York State courts. In connection with those lawsuits, Plaintiff opposed motions to dismiss and summary judgment motions on several occasions. Furthermore, Plaintiff does not lack education, inasmuch as he maintains that he is "a former federal employee and former investigator with the N.Y.C. Board of Correction."[18]

Finally, it is questionable whether the Complaint [#1], despite being sworn, otherwise qualifies as an affidavit. In that regard, the pleading consists generally of conclusory statements lacking in factual detail,[19] as mentioned above, and is internally inconsistent on

---

[17] *See*, Docket Nos. [#8] & [#9].

[18] Complaint [#1] at p. 22, attached grievance.

[19] *See, Cody v. County of Nassau*, 577 F.Supp.2d 623, 641 (E.D.N.Y. 2008) ("Plaintiff did not provide an affidavit in opposition to defendant's motion for summary judgment. Although plaintiff did submit a Verified Complaint, which "is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist," *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir.2002) (*quoting Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995)), "a verified complaint, like an affidavit, cannot create a genuine issue of material fact 'by the presentation of assertions that are conclusory.' " *Mitchell v. Dep't of Corr.*, No. 05 Civ. 5792, 2008 WL 744041, at *7, 2008 U.S. Dist. LEXIS 24830, at *21 (S.D.N.Y. Feb. 20, 2008) (*quoting Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir.2004))."), *aff'd*, 345

a key point, which is the alleged physical assault which precipitated the other claims. Specifically, the Complaint alleges that three corrections officers (Dildine, Hayes and Jaynes) assaulted Plaintiff, while Plaintiff's own grievance, which is part of the Complaint [#1], indicates that only two corrections officers assaulted him. Furthermore, at the disciplinary hearing, which took place very shortly after the incident, Plaintiff implied that the Corrections Officers may have mistakenly believed that he was about to spit, due to the fact that he had his mouth open at the time. This is inconsistent with the Complaint in this action, which indicates that the officers' actions were completely unjustified. In making these observations, the Court is not resolving any issues of credibility against Plaintiff, but is merely considering the fact of such inconsistencies, along with the other aforementioned facts, in deciding whether to exercise its discretion and excuse Plaintiff's failure to comply with the local rule. Having determined not to excuse Plaintiff's failure to comply with Local Rule 56, the Court will examine the merits of Defendants' motion.

Official Capacity Claims

Under the Eleventh Amendment, State officials can be sued in their official capacities for injunctive relief, but not for money damages. *See Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir.2009) (noting that " *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), holds that in a suit against state officials in their official capacities, monetary relief (unlike prospective injunctive relief) is generally barred by the Eleventh Amendment," though such immunity may be waived or abrogated in a particular case). In the instant case,

---

Fed.Appx. 717 (2d Cir. Sep. 16, 2009).

Plaintiff is purportedly suing for both money damages and injunctive relief.  To the extent Plaintiff is seeking money damages the official capacity claims are dismissed.

Retaliation Claims

Plaintiff maintains that the use of force against him, by Dildine, Hayes, Jaynes, Lovejoy, Davis and Labar, occurred due to retaliation for him filing grievances or other complaints.  Defendants, on the other hand, maintain that such allegation is conclusory, and contrary to the record.  The law governing such claims is clear:

> Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380–81 (2d Cir.2004). Because of the relative ease with which allegations of retaliation can be fabricated, however, courts have scrutinized such claims with particular care. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983); *see also Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001) (citations omitted), overruled on other grounds, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill*, 389 F.3d at 380 (*citing Dawes v. Walker*, 239 F.3d at 492).

*Holland v. Goord*, No. 05–CV–6295 (MAT), 2013 WL 3148324 at *13 (W.D.N.Y. Jun. 19, 2013)

Plaintiff's retaliation claims fail for several reasons.  First, as to the alleged assault by Dildine, Hayes and Jaynes, Hayes maintains that it never occurred, and Plaintiff did not come forward with evidence to refute his affidavit.  Moreover, the alleged use of force by

Lovejoy, Davis and Labar, consisting of "pushing and pulling" Plaintiff while he was being examined by Gorg and telling him to "shut up," is arguably not sufficiently serious to constitute an adverse action for purposes of a retaliation claim. More importantly, the record (even including the verified Complaint) fails to establish a triable issue of fact as to causation, and offers only conclusory allegations of a causal nexus. There is neither an indication as to which complaint supposedly triggered the retaliation nor any proof that these Defendants were aware of Plaintiff's grievance complaints. Accordingly, the retaliation claims are dismissed.

Excessive Force Claims

Apart from claims of retaliation, Plaintiff contends that Dildine, Hayes, Jaynes, Lovejoy, Davis and Labar used excessive force against him, at his cell and during the medical examination. Defendants maintain that Dildine, Hayes and Jaynes used only appropriate force to restrain Plaintiff after he attempted to spit, and that any force used by Lovejoy, Davis and Labar during Gorg's medical examination was *de minimis*. The law concerning excessive use of force is clear:

> A claim of cruel and unusual punishment in violation of the Eighth Amendment has an objective and a subjective component. The subjective inquiry looks to whether the defendant prison official acted wantonly, which turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. The objective inquiry is contextual and responsive to contemporary standards of decency. Although the extent of injury is a relevant factor, it is not a threshold requirement for an excessive force claim. Where a prison official acts maliciously and sadistically, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. But even when a prison official acts maliciously or sadistically, not every push or shove violates a prisoner's constitutional rights. The Eight Amendment's prohibition against cruel and unusual punishment does not extend to *de minimis* uses of physical force,

> provided that the use of force is not of a sort repugnant to the conscience of mankind.

*Abreu v. Nicholls*, 368 Fed.Appx. 191, 193, 2010 WL 726520 at *1 (2d Cir. Mar. 3, 2010) (citations and internal quotation marks omitted).

Here, again, Plaintiff has not come forward with evidence to refute Hayes' version of events at Plaintiff's cell. Consequently, Hayes' statement -- that he pushed Plaintiff back into his cell and onto his bunk, after Plaintiff seemingly began to spit, and that he held Plaintiff down while he was still struggling, resulting in only a red mark on Plaintiff's back -- is undisputed and fails to establish an excessive force claim. Similarly, Plaintiff's contention that Lovejoy, Davis and Labar pushed and pulled at him during his medical exam fails to establish an excessive force claim. *See, Abreu v.Nicholls*, 368 Fed. Appx. at 194, 2010 WL 726520 at *3 ("[I]t is well accepted that a mere push or shove is not actionable under the Eighth Amendment"). Notably, Plaintiff does not contend that he suffered any injury due to such pushing and shoving. The claims alleging a failure to intervene, to stop the alleged excessive force, also necessarily fail. *See, Wieder v. City of New York* , — Fed.Appx. — , 2014 WL 2722568 at *2 (2d Cir. Jun. 17, 2014) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim.") Consequently, the excessive force/failure to intervene claims are all dismissed.

Failure-to-Protect Claims

Plaintiff contends that Napoli and Colvin failed to protect him from the alleged attack at his cell. However, Defendants maintain that Plaintiff never indicated that he was in

danger of serious harm, and that Napoli and Colvin were therefore not deliberately indifferent to any particular threat to Plaintiff's safety. The law on this point is as follows:

> The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates from both other prisoners as well as corrections officers. When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that (1) he or she was incarcerated under conditions posing a substantial risk of serious harm, and that (2) prison officials exhibited deliberate indifference to the inmate's plight. This analysis requires both an objective and subjective inquiry.
>
> As to the objective requirement, a plaintiff must prove that an alleged deprivation is sufficiently serious such that it denied him or her the minimal civilized measure of life's necessities. Specifically, as noted above, in situations where an inmate's safety is at issue, that person must demonstrate that he or she was incarcerated under conditions posing a substantial risk of serious harm.
>
> To satisfy the subjective requirement, it must be shown that defendants were deliberately indifferent to a plaintiff's plight. In other words, a plaintiff must show that prison officials actually knew of, but disregarded, an excessive risk to his health and safety- the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Smolen v. Kielisek*, No. 04-CV-6042, 2006 WL 2335168 at *3-4 (W.D.N.Y. Aug. 10, 2006) (citations and internal quotation marks omitted)

In the instant case, Plaintiff merely alleges that prior to August 27, 2008, he sent letters to Napoli and Colvin, indicating that he was "being threatened by staff for filing complaints and grievances." The Complaint [#1] does not indicate that such letters, which are not before the Court, indicated that Plaintiff was in imminent danger of physical harm, or that the threats were made by any defendant in this action. To the contrary, a grievance

form that is attached to the Complaint [#1] indicates that Plaintiff previously complained of "abuse and threats" from Corrections Officer "J. Robinson," who is not a party to this action. Plaintiff has not come forward with evidence to sustain his claims against Napoli and Colvin, and consequently those claims are dismissed.

Deliberate-Indifference-to-Serious-Medical-Need Claims

Plaintiff also maintains that Gorg was deliberately indifferent to his serious medical needs, by "under-reporting" his injuries, following the alleged assault by corrections officers. As to such claim, the law is well settled:

> A prisoner's claim, under § 1983, that he was provided insufficient medical care, is analyzed under the Eight Amendment's prohibition of cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 101–3, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id*. at 104, 97 S.Ct. 285 (internal citation and quotation marks omitted). To show that he has been subjected to cruel and unusual punishment, a prisoner must satisfy a standard that includes both objective and subjective components. *See Wright* [v. Goord], 554 F.3d [255,] 268 [(2d Cir. 209)]. The objective component examines "the conduct's effect," *id*., which measures whether there was a deprivation of medical care at all, and whether it was "sufficiently serious," *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir.2006). The subjective component examines "the defendant's motive for his conduct," *Wright*, 554 F.3d at 268, which requires a showing that the defendant acted "with deliberate indifference to inmate health," *Salahuddin*, 467 F.3d at 280.

*Taylor v. Goord,* 548 Fed.Appx. 696, 698 (2d Cir. Dec. 19, 2013)

Here, the Complaint [#1] alleges that Gorg failed to accurately record Plaintiff's injuries, but does not state what those injuries were. The only evidence of Plaintiff's injuries is Gorg's report, which states that Plaintiff had a large red mark on his shoulder blades, from being restrained by corrections officers. Therefore, Plaintiff has not shown that he suffered

a serious injury, or that Gorg was deliberately indifferent to a serious medical need. The claim against Gorg is therefore dismissed.

Procedural Due Process Claims

Plaintiff contends that Esgrow and Bezio violated his procedural due process rights, in connection with the disciplinary hearing. Specifically, he maintains that Esgrow committed a procedural error, by adjourning the hearing. Plaintiff further maintains that Esgrow prevented him from calling witnesses, and found him guilty despite the existence of contradictory evidence. Plaintiff contends that Bezio contributed to these alleged constitutional violations by affirming Esgrow's actions. The law on this point is also clear:

> "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir.2004). When a prison disciplinary hearing may impose a punishment sufficient to trigger due process protections, "the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In addition, "due process requires 'that there be some evidence to support the findings made in the disciplinary hearing.' " *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir.1992) (*quoting Hill*, 472 U.S. at 457, 105 S.Ct. 2768); *see Luna v. Pico*, 356 F.3d 481, 488 (2d Cir.2004) (explaining that this Court "look[s] to see whether there was 'reliable evidence' of the inmate's guilt" supporting the disciplinary decision).

*Washington v. Gonyea*, No. 11–980–cv, 538 Fed.Appx. 23, 25 (2d Cir. Sep. 10, 2013)

In this case, the Court has reviewed the hearing transcript, and finds that Plaintiff's contention that he was prevented from calling witnesses is not supported. Moreover, it is evident that there was at least "some evidence" to support the finding of guilt. Finally, Plaintiff appears to maintain that Esgrow's brief adjournment of the hearing was improper under New York State regulations, 7 N.Y.C.R.R. § 251-5.1. However, even assuming that Esgrow violated that regulation, which Plaintiff has not shown, it would not be sufficient to establish a constitutional violation. *See, e.g., Barnes v. Henderson*, 628 F.Supp.2d 407, 412 (W.D.N.Y. 2009) ("[A]n alleged failure to provide a speedy hearing under state regulations is not enough to establish a federal due process violation.") (citations omitted) Consequently, the claims against Esgrow and Bezio are dismissed.

CONCLUSION

Accordingly, Defendants' motion for summary judgment [#8] is granted, and this action is dismissed with prejudice.

SO ORDERED.

Dated:   July 9, 2014
         Rochester, New York

                                           /s/ Charles J. Siragusa
                                            CHARLES J. SIRAGUSA
                                            United States District Judge